1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   INDEPENDENT LIVING CENTER OF          No. 2:06-cv-0435-MCE-KJM
     SOUTHERN CALIFORNIA, INC., a
12   nonprofit California
     corporation; MARGARET DOWLING,
13   NATHAN THORNTON, SYLVIA HEDBIG,
     LINDA BLOCK, HECTOR REYES,
14   MICHAEL FERONA, HOMA KARIMZAD,
     and BLANE BECKWORTH,
15
              Plaintiffs,
16
         v.                                MEMORANDUM AND ORDER
17
     MICHAEL LEAVITT, Secretary of
18   U.S. Department of Health and
     Human Services; SANDRA SHEWRY,
19   Director of California
     Department of Health Services;
20   and STEVE WESTLY, Controller
     of the State of California,
21
              Defendants.
22

23                          ----oo0oo----

24

25   ///

26   ///

27   ///

28   ///

                                    1

1    Through the present action, Plaintiffs[1] seek to enjoin

2    implementation of the Medicare Prescription Drug, Modernization

3    and Improvement Act of 2003, 42 U.S.C. § 1395w-101, et seq.

4    ("MMA") to the extent that changes in prescription drug coverage

5    available to individuals who are both eligible for benefits under

6    Medicare and Medicaid (so-called "dual eligibles") are

7    unconstitutional.  Defendant Michael Leavitt, Secretary of the

8    United States Department of Health and Human Services ("Federal

9    Defendant"), now moves to dismiss Plaintiffs' claims against the

10   government pursuant to Federal Rule of Civil Procedure 12(b)(1),[2]

11   on grounds that this Court lacks subject matter jurisdiction over

12   such claims.  The Federal Defendant also requests that

13   Plaintiffs' claims be dismissed for failure to state a claim upon

14   which relief can be granted under Rule 12(b)(6).  For the reasons

15   set forth below, the Federal Defendants' Motion will be granted.

16

17                          **BACKGROUND**

18

19    Title XVIII of the Social Security Act, commonly known as

20   the Medicare Act, establishes a program of federally subsidized

21   health insurance for the elderly and disabled.  42 U.S.C. §§

22   1395, et seq.

23   _____

24   [1]Plaintiffs include the Independent Living Center of
     Southern California, Inc. ("ILC"), an independent living center
25   established under the auspices of California Welfare and
     Institutions Code § 19801 to provide services to disabled
26   persons, as well as eight individuals who qualify as dual
     eligibles and who claim to have been impacted by implementation
27   of the MMA.

28   [2]All further references to "Rule" or "Rules" are to the
     Federal Rules of Civil Procedure unless otherwise noted.

                                 2

1  Coverage available under Medicare includes hospital inpatient and

2  related care (Part A), supplemental coverage for outpatient

3  services (Part B), and a managed-care alternative to Part B

4  (known as Part C).  Through enactment of the MMA, Congress

5  provided Medicare coverage for drugs.  Part D became effective on

6  January 1, 2006.

7       Another portion of the Social Security Act, Title XIX,

8  establishes a separate federal-state program providing medical

9  assistance for categorically low-income persons.  42 U.S.C. §§

10  1396, <u>et seq.</u>  This coverage, known as Medicaid, or MediCal in

11  California, is administered by the states and funded in part

12  through federal aid so long as each state's program complies with

13  applicable Medicaid laws and regulations.  <u>See</u> <u>Alexander v.</u>

14  <u>Choate</u>, 469 U.S. 287, 289 n.1 (1985).  California's MediCal

15  program is administered by the California Department of Health

16  Services.

17       So-called "dual eligibles" qualify for both Medicare and

18  Medicaid benefits.  For those individuals, Medicare generally

19  pays first and Medicaid provides protection for services not

20  covered under Medicare.  Prior to enactment of the MMA, Medicaid

21  paid for dual eligibles' prescription drugs.  In addition to

22  receiving a fifty percent contribution from the federal

23  government for benefits provided under Medicaid, including

24  prescription drugs, the Medicaid Act also required pharmaceutical

25  companies to make substantial rebate payments in return for

26  dispensing their products under Medicaid.

27       Exclusive provision of prescription drugs through Medicaid

28  has changed with the advent of the MMA.

1   Under Part D, Medicare becomes the primary payer for dual

2   eligibles as to all drugs covered under Medicare.  The Medicaid

3   Act was consequently amended to provide that Medicaid is not

4   available for such drugs.  42 U.S.C. § 1396u-5(d)(1).  The State

5   of California similarly enacted Welfare and Institutions Code §

6   14133.23, which eliminated the provision of drug benefits under

7   MediCal to dual-eligible beneficiaries that would otherwise now

8   be covered under Medicare, Part D.

9        The Enrollment Clause of the MMA requires that all dual

10  eligibles be automatically enrolled into private-entity

11  prescription drug plans on a random basis, with MediCal drug

12  coverage to cease on enrollment.  42 U.S.C. § 1395w-101(b)(1)(C).

13  The formularies for such plans are to be approved by the

14  Secretary of the U.S. Department of Health and Human Services

15  ("Secretary").  42 U.S.C. § 1395w-111(e)(1).  Each drug plan must

16  include drugs within each therapeutic category and class of

17  covered Part D drugs, although not necessarily all drugs with

18  such categories or classes.  42 U.S.C. § 1395w-104(b)(3)(C)(i).

19  If a particular drug is not covered under the assigned formulary

20  and a prescription is accordingly denied, a dissatisfied enrollee

21  can request review by an independent, outside entity.

22  42 U.S.C. § 1395w-22(g)(4).

23       In essence, the MMA shifts the cost of providing

24  prescription drugs to dual eligibles from Medicaid at Title XIX

25  to Medicare at Title XVIII.

26  ///

27  ///

28  ///

4

1  In exchange for assuming this obligation, under the so-called

2  "clawback" provision of the MMA the states must reimburse the

3  federal government for fifty percent of the cost of providing

4  dual eligibles prescription drugs, which mirrors the fact that

5  prior to the enactment of the MMA the states were required to

6  provide such drugs, with a fifty percent contribution from the

7  federal government.  42 U.S.C. §§ 1396u-5(c)(1)-(2).  Under the

8  MMA, however, unlike Medicaid, pharmaceutical companies no longer

9  are required to make rebate payments.  In addition, under Part D,

10  even dual eligibles with incomes not exceeding the poverty level

11  must make a modest co-payment for needed drugs, ranging from $1

12  for generic medicines to $3 for name brands.[3]

13      In order to ease transition difficulties between drug

14  payment under MediCare and reassignment of dual eligibles to

15  coverage under Medicare Part D, the California Legislature

16  enacted legislation on an emergency basis to pay for Part D

17  drugs.  California Welfare and Institutions Code § 14133.23(f).

18  That emergency legislation was subsequently extended until May

19  16, 2006.

20       In filing the present lawsuit, Plaintiffs contend that

21  transfer of dual eligibles' prescription drug coverage to

22  Medicare has created a "dire situation" rife with the potential

23  for damage to dual eligibles' health if needed medications cannot

24  be obtained.

25

26      [3]This is a change from prior coverage available to dual
   eligibles under Medicaid, which provided that no services would
27  be denied on account of a beneficiary's "inability to pay a
   deduction, cost sharing, or similar charge..."  42 U.S.C. §
28  1396o(e).

Plaintiffs also contend that formularies assigned by Medicare are less comprehensive than the drug benefits formerly available under MediCal.  Although they concede that dual eligibles can apply for a waiver/exception if drugs not on the formulary are determined to be necessary, Plaintiffs contend that because the pharmacy cannot represent the dual eligible in obtaining such a waiver/exception, the process is too cumbersome inasmuch as treating physicians simply will not take the time necessary to make such an appeal.  Plaintiff contends that this creates an "extraordinary barrier" for dual eligibles to obtain necessary medicine.

Plaintiffs further contend that many dual eligibles have not in fact been automatically enrolled into a drug formulary under Medicare, which also poses a significant obstacle in obtaining needed drugs.

Finally, Plaintiffs argue that the co-payment requirement imposed by Part D (whether $1 or $3) is impermissible because many dual eligibles simply cannot afford any co-payment.

**STANDARD**

In moving to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the challenging party may either make a "facial attack" on the allegations of jurisdiction contained in the complaint or can instead take issue with subject matter jurisdiction on a factual basis ("factual attack").

///

///

1   Thornhill Publ'n Co. v. Gen. Tel. & Elect. Corp., 594 F.2d 730,

2   733 (9th Cir. 1979); Mortensen v. First Fed. Sav. & Loan Ass'n,

3   549 F.2d 884, 891 (3d Cir. 1977).  If the motion constitutes a

4   facial attack, the Court must consider the factual allegations of

5   the complaint to be true.  Williamson v. Tucker, 645 F.2d 404,

6   412 (5th Cir. 1981); Mortensen, 549 F.2d at 891.  If the motion

7   constitutes a factual attack, however, "no presumptive

8   truthfulness attaches to plaintiff's allegations, and the

9   existence of disputed material facts will not preclude the trial

10  court from evaluating for itself the merits of jurisdictional

11  claims."  Thornhill, 594 F.2d at 733 (quoting Mortensen, 549 F.2d

12  at 891).

13       On a motion to dismiss for failure to state a claim under

14  Rule 12(b)(6), all allegations of material fact must be accepted

15  as true and construed in the light most favorable to the

16  nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,

17  337-38 (9th Cir. 1996).  A complaint will not be dismissed for

18  failure to state a claim unless it appears beyond doubt that

19  plaintiff can prove no set of facts in support of his [or her]

20  claim that would entitle him [or her] to relief.  Yamaguchi v.

21  Dep't of the Air Force, 109 F.3d 1475, 1480 (9th Cir. 1997)

22  (quoting Lewis v. Tel. Employees Credit Union, 87 F.3d 1537, 1545

23  (9th Cir. 1996).

24       If the Court grants a motion to dismiss a complaint, it must

25  then decide whether to grant leave to amend.  Generally, leave to

26  amend should be denied only if it is clear that the deficiencies

27  of the complaint cannot be cured by amendment.  Broughton v.

28  Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980).

                                    7

1                                **ANALYSIS**

2

3  A.  Exhaustion of Administrative Remedies.

4        The case law firmly establishes that "virtually all legal

5  attacks" implicating the Medicare statutory scheme must be

6  routed, at least initially, through the Medicare administrative

7  appeals process.  Ill. Council on Long Term Care v. Shalala, 529

8  U.S. 1, 13 (2000).  Exhaustion of administrative remedies is

9  generally required in order to prevent "premature interference

10  with agency processes, so that the agency may function

11  efficiently and so that it may have an opportunity to correct its

12  own errors, to afford the parties and the courts the benefit of

13  its experience and expertise, and to compile a record which is

14  adequate for judicial review."  Weinberger v. Salfi, 422 U.S.

15  749, 765 (1975).  Exhaustion applies with full force to the

16  claims of individual Medicare beneficiaries (Heckler v. Ringer,

17  466 U.S. 602, 615-17 (1984), citing Mathews v. Eldridge, 424 U.S.

18  319, 328 (1976)), including beneficiaries seeking to raise

19  constitutional claims.  Weinberger v. Salfi, 422 U.S. at 763-64.

20        Exhaustion of Medicare claims contains two components.

21  First, there is a nonwaivable requirement that a claim for

22  benefits be presented to the agency.  Heckler v. Ringer, 466 U.S.

23  at 617.  Second, a claimant must fully pursue the prescribed

24  administrative remedies prescribed by the Medicare system,

25  although this requirement may be waived.  Id.  Initial claim

26  presentment is "an essential and distinct precondition" for

27  jurisdiction and is "purely 'jurisdictional' in the sense that it

28  cannot be 'waived' by the Secretary in a given case."

                                    8

1  <u>Mathews v. Eldridge</u>, 424 U.S. at 328-29.

2      While the Complaint (at ¶¶ 121-22) does allege that certain

3  Plaintiffs have been denied coverage for certain drugs, the

4  Complaint does not allege that any Plaintiff presented an

5  unsuccessful exemption claim paving way for this Court's

6  jurisdiction.[4]  The MMA contains procedures for both presenting

7  claims to the sponsor of the Medicare Part D drug formulary and

8  pursuing those claims through an administrative appeals process.

9  42 U.S.C. §§ 1395w-104(g)-(h) (incorporating 42 U.S.C. §§ 1395w-

10 22(g)(1)-(5).  Plaintiffs' failure to establish that any concrete

11 appeals have been presented, yet alone pursued and denied,

12 prevents them from resorting to the jurisdiction of this Court.

13 As explained by <u>N.Y. Statewide Senior Action Council v. Leavitt</u>,

14 409 F. Supp. 2d 325, 329 (S.D.N.Y. 2005):

15         "The Medicare Act does not contemplate that... an individual
           can file a complaint in federal court before even attempting
16         to present a claim to the agency.  It would be a wholesale
           subversion of the Medicare Act's legislative intent to avoid
17         overburdening the courts (citation omitted) if beneficiaries
           were able to bring federal cases where a simple phone call,
18         e-mail or letter might straighten out the problem."

19

20 ///

21 ///

22 ///

23 _____

24      [4]Paragraph 122 does allege that two Plaintiffs, Blane
   Beckworth and Margaret Dowling, were able to successfully obtain
25 drug exceptions from their formularies in order to obtain needed
   medicine.  Although those Plaintiffs may consequently have
26 presented a claim, the fact that they apparently obtained
   favorable redress through the administrative process does not
27 allow their claims to satisfy the presentment requirement
   necessarily applicable to other claims upon which administrative
28 relief was not forthcoming.

1    Plaintiffs have not substantively opposed this Motion, other

2  than to incorporate arguments previously made in their Memorandum

3  For Preliminary Injunction, filed April 2, 2006, and to allege

4  that this Court should refrain from considering this matter in

5  any event pending the Ninth Circuit's ruling on Plaintiffs'

6  appeal from the May 19, 2006 denial of that request for

7  preliminary injunctive relief.[5]   (Pls.' Opp'n, 2:8-17).

8  Tellingly, however, Plaintiffs' Complaint, at ¶ 126, does make

9  the blanket statement that seeking any administrative relief

10 would be "futile".  In addition, while Plaintiffs do not

11 specifically incorporate by reference their Reply filed in

12 support of their Motion for Preliminary Injunction, that Reply,

13 in response to Federal Defendants' argument that no adequate

14 exhaustion had been established, also states that it would be

15 "futile" to seek any administrative remedy given the

16 constitutional violations alleged by Plaintiff.

17    A blanket futility argument, however, is insufficient to

18 skirt the mandate of exhaustion.  First, as indicated above, the

19 presentment requirement cannot be waived under any circumstance,

20 including, as indicated above, cases where constitutional

21 challenges are raised.  <u>Weinberger v. Salfi</u>, 422 U.S. at 764.

22 ///

23 ///

24 ///

25 _____

26    [5] That position is wrong inasmuch as an appeal from a
preliminary injunction does not deprive a district court of
jurisdiction.  <u>See</u> <u>Moltan Co. v. Eagle-Picher Indus., Inc.</u>, 55
27 F.3d 1171, 1174 (6th Cir. 1995) (district court may proceed with
action on the merits where order denying preliminary injunction
28 appealed).

1  In addition, merely alleging that further exhaustion would be

2  "futile", as Plaintiffs appear to claim, is inadequate to excuse

3  even the waivable requirement that subsequent levels of

4  administrative review be exhausted.  <u>Id.</u> at 766 (exhaustion may

5  not be dispensed with by a mere conclusion of futility).

6       Significantly, to avail themselves of the futility doctrine

7  for purposes of excusing further compliance with the

8  administrative appeals process, Plaintiffs must also show, with

9  respect to constitutional issues like those advanced by their

10 lawsuit, that such issues are "wholly collateral" to a claim for

11 Medicare benefits and that any alleged injury could not be

12 "remedied by the retroactive payment of benefits after exhaustion

13 of administrative remedies."  <u>Heckler v. Ringer</u>, 466 U.S. at 618.

14 Plaintiffs have not, and cannot, argue that their claims against

15 the Federal Defendant are "wholly collateral" to claims for

16 prescription drug benefits.  Instead, implicit in their claims is

17 the contention that drug benefits are either too low (by

18 requiring a co-payment, for example) too narrow (with respect to

19 available medications within a particular formulary), or too

20 cumbersome in terms of presenting a claim in the first instance.

21 These claims are all inextricably intertwined with claimed drug

22 benefits and are not entirely independent, or wholly collateral,

23 so as to excuse compliance with the administrative appeals

24 process.

25      The mere fact that Plaintiffs' Complaint does not address

26 the exhaustion requirement mandates dismissal under Rule 12(b)(1)

27 in and of itself.

28 ///

1  The Complaint is devoid of any allegations that concrete claims

2  have been unsuccessfully presented, and in the absence of such

3  allegations no federal jurisdiction is present.  Moreover, even

4  if such claims had been identified, which they have not,

5  Plaintiffs cannot rely on an argument that further administrative

6  appeals would be "futile" under the circumstances present here in

7  any event.

8       While the Federal Defendant is consequently entitled to

9  dismissal of Plaintiffs' claims on jurisdictional grounds alone,

10 the Court cannot rule out that Plaintiffs might be able to remedy

11 the deficiencies of their Complaint in that regard through

12 amendment.  It hence becomes appropriate for the Court to look

13 beyond the current jurisdictional shortcomings of the Complaint

14 and assess Plaintiffs' allegations on their merits.  Examination

15 of the various claims asserted, as delineated below, shows that

16 those claims are not viable, presenting yet another justification

17 for dismissal of this action.

18

19 B.  Tenth Amendment Concerns.

20      Plaintiffs assert, in their First Claim, that by shifting

21 the provision of prescription medications away from the states,

22 the federal government has interfered with state sovereignty over

23 administration of states' own poverty drug programs for its

24 poorest citizens.

25 ///

26 ///

27 ///

28 ///

1   Plaintiffs contend that such conduct runs afoul of the Tenth

2   Amendment's reservation, to the states, of powers not delegated

3   to the United States by the Constitution.[6]   Plaintiffs

4   specifically contend that the MMA's clawback provision, in

5   requiring state participation in payment for Part D Medicare

6   costs incurred for dual eligibles, is impermissible.   Plaintiffs

7   argue that the federal government has no power to command such an

8   involuntary payment from the states, despite the fact as

9   indicated above that the switch from Medicaid to Medicare appears

10  to have simply entailed a change from states' direct

11  responsibility under Medicaid for fifty percent of expenditures

12  to a new system whereby, in exchange for federal assumption of

13  payment responsibility, the state simply pays the federal

14  government the same fifty percent it would otherwise have had to

15  incur.

16        The Federal Defendant opposes Plaintiffs' Tenth Amendment

17  challenge primarily on grounds that private individuals like

18  Plaintiffs herein simply lack standing to raise any question

19  under the Tenth Amendment, pursuant to well-established precedent

20  dating back to <u>Tenn. Elec. Power Co. v. TVA</u>, ("<u>TVA</u>") 306 U.S.

21  118, 144 (1939).

22  ///

23  ───────────────

24        [6]Plaintiffs also make a related argument that the same
    conduct violates the Necessary and Proper Clause of Article I,
25  section 8 of the Constitution, on grounds that the Constitution
    permits Congress only to make laws as "necessary and proper" to
26  effectuate the powers granted to the federal government by the
    Constitution.   Plaintiffs appear to assert that because the care
27  of the poor is reserved to the states under the Tenth Amendment,
    federal enactment of laws intruding on such sovereignty is also
28  impermissible under the Necessary and Proper Clause.

1   While Plaintiffs have not disputed the import of the TVA holding

2   in this regard, they argued, in connection with their previous

3   preliminary injunction request, that TVA has been overruled by a

4   subsequent Supreme Court decision, N.Y. v. U.S., 505 U.S. 144

5   (1992).  In passing, the Court's N.Y. decision noted that "the

6   Constitution divides authority between federal and state

7   governments for the protection of individuals" (Id. at

8   181), and while one Seventh Circuit decision has deemed that

9   pronouncement to have effectively overruled TVA (see Gillespie v.

10  City of Indianapolis, 185 F.3d 693, 700-03 (7th Cir. 1999), other

11  courts have concluded just the opposite, reasoning that because

12  the N.Y. decision does not even mention TVA, it cannot be

13  construed as effectively overruling it.  See Medeiros v. Vincent,

14  431 F.3d 25, 34 (1st Cir. 2005).  In Artichoke Joe's Cal. Grand

15  Casino v. Norton, 278 F. Supp. 2d 1174, 1181 (E.D. Cal. 2003),

16  Judge Levi found that the Supreme Court has not overruled its TVA

17  holding while noting other cases, including the Seventh's

18  Circuit's Gillespie opinion, that reached the opposite

19  conclusion.

20      In addition, because N.Y. involved only a claim asserted by

21  the State of New York, the question of private party standing

22  under the Tenth Amendment was simply not an issue in that case,

23  and the word standing was never even mentioned in the N.Y.

24  decision.  Id.

25      It is well-recognized that only the Supreme Court itself has

26  the prerogative of overruling its own decisions.  City of

27  Roseville v. Norton, 219 F. Supp. 2d 130, 147-48 (D.D.C. 2002).

28  ///

14

The <u>N.Y.</u> decision is not sufficient to overrule a long-established lack of standing on the part of private litigants to enforce sovereignty issues under the Tenth Amendment.  As the government has pointed out, California has ample resources to object to the provisions of the MMA should it choose to do so.

     Even aside from standing, which the Court believes is fatal to Plaintiffs' Tenth Amendment claims in this case, Congress has in any event authority under the Tax and Spending Clause to urge states to adopt legislative programs consistent with federal interests.  <u>N.Y.</u>, 505 U.S. at 166-67.  See also <u>S.D. v. Dole</u>, 483 U.S. 203, 207 (1987) (condition imposed on receipt of federal funding upheld against Tenth Amendment challenge).  Congress thus has the "power to fix the terms upon which its money allotments to states shall be disbursed." <u>Mayweathers v. Newland</u>, 314 F.3d 1062, 1069 (9th Cir. 2002).

     By providing services to states' citizens under Medicare that formerly were provided by the states, the federal government simply is asking that monies the state formerly paid be transferred to it.  The government hence links its provision of prescription drug coverage to such payment.  While the states could presumably elect to continue to provide such coverage with no contribution whatsoever from the federal government, government funding is linked to its recoupment of a portion of its expenses from the states.  This appears to be permissible under the Tenth Amendment under the above-cited cases.

///

///

///

1  C. Unlawful Delegation of Legislative Powers.

2       Plaintiffs allege, in their Second Claim, that the MMA's

3  delegation of responsibility, to the Secretary, for approval of

4  drug formularies amounts to an abdication of its own legislative

5  responsibility.  According to Plaintiffs, this violates the so

6  called non-delegation doctrine identified by the Supreme Court in

7  Panama Refining Co. v. Ryan, 293 U.S. 388, 421-22 (1935).

8       This argument is patently untenable.  It has long been

9  settled that to burden Congress with all federal rulemaking would

10 defeat the concept of a workable national government.  Loving v.

11 U.S., 517 U.S. 748, 758 (1996).  Hence Congress passes

12 constitutional muster by legislating in broad terms and leaving a

13 certain degree of discretion to executive or judicial actors.

14 Touby v. U.S., 500 U.S. 160, 165 (1991).  To survive a challenge

15 under the non-delegation doctrine, Congress only has lay down an

16 intelligible principle pursuant to which a person authorized to

17 act must conform.   Whitman v. Am. Trucking Ass'ns, 531 U.S. 457,

18 474-75 (2001).

19      Here, while Congress has given the Secretary discretion to

20 approve Part D private drug formularies, it has directed that

21 each formulary include drugs within each therapeutic category and

22 class of covered Part D drugs, although not necessarily all drugs

23 with such categories or classes.  42 U.S.C. § 1395w-

24 104(b)(3)(C)(i).  Hence the Secretary has been given broad

25 guidelines from which to exercise his discretion in approving

26 such formularies.

27 ///

28 ///

16

1  In addition, in disapproving drug plans, Congress has indicated

2  that there must be some evidence that the plan's practices

3  discourage enrollment, and that this discouragement will likely

4  have a substantial effect on certain Medicare beneficiaries.  42

5  U.S.C. § 1395w-111(e)(2)(D)(I).  All of this provides enough

6  direction to the Director to survive challenge under the non-

7  delegation doctrine.

8

9  D.  Violations of Fifth Amendment Rights.

10      Plaintiffs contend that their due process rights as

11  protected by the Fifth Amendment are violated by the MMA's

12  requirement that dual eligibles make nominal co-payments for

13  needed prescriptions.  Plaintiffs appear to argue that requiring

14  such payments is not only unjustifiable and in derogation of

15  Fifth Amendment due process but also amounts to discrimination

16  against the poor in violation of equal protection concerns also

17  guaranteed by the Fifth Amendment.

18      It has long been held that the due process clauses of both

19  the Fifth and Fourteenth Amendments are intended to prevent

20  governmental abuse of power, and "generally confer no affirmative

21  right to governmental aid".  DeShaney v. Winnebago County Dep't

22  of Soc. Servs., 489 U.S. 189, 196 (1989).  Moreover, with respect

23  to equal protection, the constitutionality of the co-payment

24  provision must be judged under a rational basis standard, since

25  poverty alone is not a suspect classification demanding strict

26  scrutiny.  See Harris v. McCrae, 448 U.S. 297, 323 (1980).

27  ///

28  ///

1   Consequently the government need only show a rational

2   relationship between its requirement of co-payments and a

3   legitimate governmental purpose.  <u>Bd. of Trustees of Univ. of</u>

4   <u>Ala. v. Garrett</u>, 531 U.S. 356, 367 (2001).

5        Here, the government can show a rational relationship

6   between allocating limited aid dollars and fostering investment

7   by dual eligibles in the efficiency of their own medical care

8   through demanding small co-payments as a demonstration of

9   accountability.

10       Plaintiffs also appear to argue that their due process

11  rights are infringed by the delegation to privately administered

12  drug formularies of control over their ultimate drug benefits,

13  and by participants' random assignment to such formularies.

14  Plaintiff ILC, for example, contends that some drug plans are

15  more comprehensive than others, and some authorize fewer drugs

16  than would have previously available under MediCal.  Plaintiffs

17  also assert that to the extent dual eligibles are enrolled in a

18  "bottom" plan, their Fifth Amendment rights are violated.

19  Plaintiffs ignore the fact, however, that all drug formularies

20  must include medications across the therapeutic spectrum.  See 42

21  U.S.C. § 1395w-104(b)(3)(C)(i).  In addition, participants who

22  still claim that they need a particular drug not on the formulary

23  can apply for a waiver through the appeal process.  These

24  safeguards adequately protect participants' rights.  Plaintiffs

25  are not entitled to optimal coverage so long as the coverage they

26  are afforded is adequate, as the Court believes to be the case

27  here.

28  ///

18

As indicated above, due process rights are not impinged simply because of limitations in governmental aid implicit in coverage that falls short of offering unrestricted access to all prescription drugs.

E.  Automatic Enrollment Provision.

For a Third Claim, Plaintiffs appear to assert that dual eligibles who for whatever reason have not successfully enrolled in Medicare Part D coverage, despite the automatic enrollment provisions of the MMA, should be permitted to retain coverage under MediCal on an indefinite basis if no enrollment occurs. This argument is disingenuous in light of the stopgap measures provided by both California and the federal government in paying claims temporarily under MediCal.

**CONCLUSION**

As set forth above, Plaintiffs' Complaint, on its face, does not establish the prerequisites for federal jurisdiction over claims sounding in Medicare by failing to allege that requisite administrative appeals have been unsuccessfully attempted.  Even were Plaintiffs to be granted leave to amend their Complaint for purposes of correcting those defects, however, examination of the Complaint on its merits shows that none of the claims advanced by Plaintiffs are meritorious.

///

///

19

1  The Federal Defendants' Motion to Dismiss is GRANTED both under

2  Rule 12(b)(1) and 12(b)(6).[7]  No leave to amend will be permitted

3  under the circumstances, since the Court does not believe that

4  the overall deficiencies of the Complaint can be remedied through

5  amendment.

6

7       IT IS SO ORDERED.

8

9  DATED: June 28, 2006

10

11

12                                   _____

13                                   MORRISON C. ENGLAND, JR
                                     UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____

       [7]Because oral argument will not be of material assistance,
28  the Court orders this matter submitted on the briefing.  E.D.
    Cal. Local Rule 78-230(h).

20